Lincoln D. Bandlow (SBN: 170449)
Lincoln@BandlowLaw.com
Andrew M. Keyes (SBN: 327549)
Andrew@BandlowLaw.com
**Law Offices of Lincoln Bandlow, P.C.**
1801 Century Park East, Suite 2400
Los Angeles, CA 90067
Telephone: 310.556.9680
Facsimile: 310.861.5550

Attorney for Plaintiffs
General Charles E. "Chuck" Yeager (Ret.) and
General Chuck Yeager, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| GENERAL CHARLES E. "CHUCK" YEAGER (RET.), and GENERAL CHUCK YEAGER, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>AIRBUS GROUP SE, AIRBUS DEFENSE AND SPACE, INC., AIRBUS HELICOPTERS, INC., and AIRBUS S.A.S. and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 8:19-cv-01793-JLS-ADS<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>1. **VIOLATION OF CALIFORNIA CIVIL CODE SECTION 3344 (CAL. CIV. CODE §3344)**<br>2. **VIOLATION OF COMMON LAW RIGHT OF PUBLICITY**<br>3. **FALSE ENDORSEMENT UNDER THE LANHAM ACT (15 U.S.C. §1125(A))**<br>4. **COMMON LAW TRADEMARK INFRINGEMENT**<br>5. **FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. §1114(1))**<br>6. **BREACH OF CONTRACT**<br>7. **UNJUST ENRICHMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs General Charles E. "Chuck" Yeager (Ret.) ("General Yeager") and General Chuck Yeager, Inc. ("GCYI") (collectively "Plaintiffs"), by and through their undersigned attorney Lincoln Bandlow, hereby claim against defendants Airbus Group SE, Airbus Defense and Space, Inc., Airbus Helicopters, Inc., and Airbus S.A.S. (hereinafter, collectively referred to as "Airbus"), as follows:

## NATURE OF THE ACTION

1.   General Yeager is one the most, if not *the* most, famous pilots of all time. He is known around the world as the pilot who conquered the speed of sound. Indeed, he has flown at *twice* the speed of sound. As a result of his recognizable and well-known identity, General Yeager has been retained to provide commercial endorsements for selected companies, and they have paid substantial compensation for his services. Thus, using his name, particularly in connection with any form of aircraft, is incredibly valuable. This case is about the knowing and intentional theft by defendants of that highly valuable commodity.

## THE PARTIES

2.   General Yeager is a retired General Officer of the United States Air Force. General Yeager's historical background and aviation accomplishments have all served to create a valuable, unique identity and commodity. General Yeager served in this U.S. Army Air Force during World War II as a fighter pilot, flying P-51 Mustangs. During one mission, General Yeager was shot down, evaded capture, and aided local resistance forces. He escaped from behind enemy lines to American control and resumed his duties as a fighter pilot. He then went on to become one of the few American fighter pilots to become an "ace in a day", by downing five enemy fighters in one mission. At the end of World War II, General Yeager had been credited with 11.5 official victories and was credited with holding one of the first victories in his fighter group against a jet fighter plane.

3.   After his service during World War II, General Yeager became a test pilot. In that capacity, he accomplished the feat for which he is perhaps best known, that of being the first person to break the speed of sound (known and referred to as "Mach 1"). Shortly thereafter, he again broke records, becoming the first person to exceed 2.4 times the speed of sound (known and

referred to as "Mach 2.4"). He subsequently set and/or broke additional aviation and speed records. General Yeager then went on to command the United States Air Force Aerospace Research Pilot School, the 405th Tactical Fighter Wing, the 4th Tactical Fighter Wing, and also served as Vice-Commander of the Seventeenth Air Force.

4. Post retirement, General Yeager continued to flourish in achievements which contribute to the value of his identity, including his setting of flight records in light general aircraft. His stature as an elite test pilot was further cemented in Tom Wolfe's best-selling non-fiction book *The Right Stuff* and the Academy Award-nominated film adaptation of the same name, both of which prominently feature General Yeager and his exploits. He has been featured, recognized, and honored for his accomplishments by such well-respected people and organizations as Marshall University, the State of West Virginia, President Ford, the National Aviation Hall of Fame, President Reagan and the Aerospace Walk of Honor.

5. General Yeager has taken steps to utilize and protect his name, identity and image. He has spoken to various groups, organizations and committees. For example, he has served as a spokesperson for AC Delco Corp., which saw its sales dramatically increase as a result of the use of his name, likeness, identity and endorsement. He also leant his name, likeness, voice, and technical expertise to the renowned computer games *Chuck Yeager's Advanced Flight Trainer* and *Chuck Yeager's Air Combat.* He has been featured on the cover of numerous magazines as a result of his accomplishments, status, and historical activities. General Yeager charges and receives a fee for the commercial use of his name, image, and/or identity, and additionally charges for any endorsements of products or companies. General Yeager also engages in activities and appearances resulting in substantial charitable contributions.

6. GCYI is a corporation organized and operating under the laws of the State of California.

7. General Yeager and his wife Victoria Yeager were residents of the state of California at all times when the events which precipitated this action occurred.

8. Upon information and belief, Defendant Airbus SE is a European multinational aerospace corporation that designs, manufactures, and sells civil and military aerospace products

worldwide and manufactures in the European Union and other countries. Upon information and belief, the company has three divisions: Commercial Aircraft, Defense and Space, and Helicopters.

9. Upon information and belief, Defendant Airbus Defense and Space, Inc. is a division of Airbus responsible for defense and aerospace products and services. The division was formed in January 2014. Upon information and belief, Airbus Defense and Space, Inc. has offices throughout the United States, including an office in Huntington Beach, California.

10. Upon information and belief, Defendant Airbus S.A.S. was founded in 1970 and engages in designing, manufacturing, and delivering aircrafts, as well as offers products, including commercial aircraft, double-deck aircraft and passenger aircraft, helicopters, civil helicopters, fire support helicopters, military helicopters, and corporate helicopters, defense and security, cyber security, and space, science and telecommunication satellites and navigation tools. Upon information and belief, Airbus S.A.S. has offices in the United States as well as France, Germany, Russia, Spain, Canada, Latin America, Africa, the Middle East, China, Japan, India and Singapore. Upon information and belief, Airbus S.A.S. operates as a subsidiary of Airbus SE.

11. Upon information and belief, Defendant Airbus Helicopters, Inc. is a subsidiary of Airbus S.A.S., with its principal place of business in Grand Prairie, Texas.

12. Upon information and belief, Airbus owns and/or operates the website located at URL http://www.airbus.com.

13. Plaintiffs do not yet know the true names and capacities of Defendants named as DOEs 1 through 10, inclusive, and they are therefore sued by fictitious names. Each Doe Defendant is in some way an actor responsible for the matters alleged and should also be subject to and bound by the requested relief. Plaintiffs will seek leave of Court to amend this pleading to state their true names and capacities after they are ascertained.

14. In the acts and things alleged, each Defendant was the agent, employee or co-conspirator of each other Defendant and each acted in the course and scope of the agency, employment or conspiracy with ratification and/or approval of the other Defendants.

**JURISDICTION AND VENUE**

15. This Court has exclusive jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a). This is a civil action arising under federal law, the Lanham Act of 1946 as amended (codified at 15 U.S.C. §§ 1051, et seq.).

16. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

17. This Court has personal jurisdiction over Defendants as Defendants purposefully directed their tortious conduct towards Plaintiffs, with full knowledge that Plaintiffs were residents of the state of California and that the harm would be felt in California. Moreover, the facts set forth in Paragraphs 19-31 further establish that this Court has personal jurisdiction over Defendants.

18. Venue is proper in the Central District, as Defendants have, and continue to, seek out and engage in business throughout California, Defendants purposefully directed their tortious conduct towards residents of the state of California, and upon information and belief, Defendants have continuous systematic contacts with the Central District of California, including an office located within the Central District. Moreover, as set forth below, Defendants entered into an agreement with Plaintiffs that if there was any dispute regarding the use of Plaintiffs' name, trademark, likeness or identity that any such dispute would be resolved in a federal court in California.

**THE UNAUTHORIZED USE OF GENERAL YEAGER'S NAME AND IDENTITY AND GCYI'S TRADEMARKS**

19. In 2008, at the request of Airbus, General Yeager visited Airbus facilities in or around Munich, Germany and in or around Toulouse, France. General Yeager was invited to these Airbus facilities to honor him and have him speak to and inspire Airbus employees by relating his storied history. In addition, while making these visits, General Yeager was invited to and did fly the Airbus A380 aircraft. Airbus was informed and agreed that in connection with this 2008 visits to Airbus, General Yeager's presentation would be videotaped so that those employees who could not attend the meeting could watch it at a later date, but that the video

would only be used internally. Airbus further agreed that the video was not permitted to be used for sales, advertising, promotion or any use not internal to Airbus unless a deal setting the terms of same was entered into between General Yeager and Airbus.

20. No deal was entered into between General Yeager and Airbus to permit any video of General Yeager's 2008 visit to be used for sales or advertising.

21. For several years, Airbus actively sought to have General Yeager endorse its brands. Such efforts included meetings with Lutz Bretling, the CEO of Eurocopter (predecessor to defendant Airbus Helicopters, Inc.); invitations to "VIP Weekends" arranged to potentially promote Airbus brands; and meetings with Tom Enders, then-CEO of Airbus SAS.

22. At all relevant times, Airbus and its agents were aware that General Yeager was a resident of the state of California. Airbus executives, including CEO Tom Enders, sent communications to General Yeager addressed to General Yeager's home in Grass Valley, California. Indeed, Airbus paid for General Yeager's air travel from California for various meetings.

23. During the negotiations between General Yeager and Airbus regarding a potential endorsement deal, Tom Enders agreed that any disputes arising from the negotiations for and/or the conducting of any endorsement deal would be resolved in a court of Plaintiffs' choosing in the state of California.

24. Airbus wanted to use General Yeager's name in press releases. General Yeager informed Airbus that it would cost over one million dollars ($1,000,000.00) to do so, and General Yeager would have veto power over any specific usage (i.e. – style, reference, etc.).

25. Airbus declined to accept General Yeager's fee requirement although negotiations continued.

26. Even though no authorization, permission or approval had been granted, on or about June 20, 2017, Airbus published an advertising/promotional commercial piece on its website (the "infringing material"). The publication with the infringing material was intended to highlight Airbus' intentions of making their cost-effective and fast way to fly with Airbus' Racer concept.

27. A copy of the Publication is attached hereto as Exhibit A. The pertinent paragraph states:

"Seventy years ago, [American test pilot] Chuck Yeager broke the sound barrier," said Guillaume Faury, CEO of Airbus Helicopters, at the Racer announcement press conference. Now, he said, "we're trying to break the cost barrier. It cannot be 'speed at any cost.'" (https://www.airbus.com/newsroom/news/en/2017/06/a-clean-sheet-approach-to-airbus-racer-high-speed-demonstrator.html, posted on June 20, 2017).

28. Airbus actively took steps to distribute and disseminate the infringing material, without consent, and made the infringing material available to others for republication and distribution.

29. By utilizing General Yeager's name and identity and federally registered trademarks in the infringing material, Airbus impaired the ability of General Yeager to receive his established earning potential from the use of his name and identity and federally registered trademarks.

30. Due to Airbus' infringing advertisement, subsequent publications using General Yeager's name and likeness were published – again without consent – to promote Airbus' product. The URL for an article entitled "Airbus Racer is a High-Speed and Cost-Effective Helicopter" dated June 26, 2017 is located at: https://blog.dupontregistry.com/news/airbus-racer-high-speed-cost-effective-helicopter/.

31. In addition, in or about 2012, Airbus employee Terry Lutz stated to Plaintiffs that he enjoyed seeing an Airbus sales video that showed General Yeager saying how much he liked flying the A380 airplane. Based on this statement, Plaintiffs inquired of Airbus about any such promotional video but were told that such a promotional video could not be located. Upon information and belief, Plaintiffs contend that such a video either does exist or did exist and is or was concealed from Plaintiffs to this date. Thus, without permission, Airbus used General Yeager's name, likeness, identity and federal trademarks in a video advertisement.

32. Upon information and belief, the concealment of the video by Airbus tolls any statute of limitations based on the doctrine of delayed discovery.

# CLAIMS FOR RELIEF

## COUNT I

### Violation of California Civil Code § 3334 –

### By General Chuck Yeager Against Airbus Group SE, Airbus Helicopters, Inc., Airbus S.A.S.

33. Plaintiffs incorporate herein by reference each of the preceding allegations of this Complaint as if they were set forth in full herein.

34. California Civil Code § 3334 provides in relevant portion that:

> Any person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent…shall be liable for any damages sustained by the person or persons injured as a result thereof. In addition, in any action brought under this section, the person who violated the section shall be liable to the injured party or parties in an amount to equal the greater of seven hundred fifty dollars ($750) or the actual damages suffered by him or her as a result of the unauthorized use, and any profits from the unauthorized use that are attributable to the use and are not taken into account in computing the actual damages. In establishing such profits, the injured party or parties are required to present proof only of the gross revenue attributable to such use, and the person who violated this section is required to prove his or her deductible expenses. Punitive damages may also be awarded to the injured party or parties. The prevailing party in any action under this section shall also be entitled to attorney's fees and costs.

35. General Yeager's name and likeness were utilized in Airbus' infringing material without his authorization, permission or consent.

36. The commercial value of General Yeager's name and likeness has been established by prior endorsement agreements and similar agreements. The use of General Yeager's name and likeness in endorsement deals for other companies has resulted in an increase in sales and marketing, and it is therefore likely that the use of General Yeager's name and likeness here similarly resulted in an increase in Airbus' profits, particularly in light of General Yeager's well-known association with aircraft.

37. At the time of the infringing materials, General Yeager customarily charged hundreds of thousands to millions of dollars for the use of his name, likeness and/or identity.

38. As a result of Airbus' wrongful actions, General Yeager has been forced to retain counsel and bring this suit.

39. General Yeager therefore seeks general damages, specific damages, punitive damages and attorneys' fees and costs.

40. General Yeager and Airbus Group SE, Airbus Helicopters, Inc. and Airbus S.A.S. entered into a binding tolling agreement signed by all parties regarding the claims asserted herein such that it was agreed that the statute of limitations for these claims would not expire until after September 18, 2019 and therefore these claims are timely asserted.

## COUNT II

### Violation of California Common Law Right of Publicity -

### By General Chuck Yeager Against Airbus Group SE,

### Airbus Helictopers, Inc., Airbus S.A.S.

41. Plaintiffs incorporate herein by reference each of the preceding allegations of this Complaint as if they were set forth in full herein.

42. Defendants Airbus Group SE, Airbus Helicopters, Inc. and Airbus S.A.S.'s unauthorized and unlawful use of General Yeager's name, likeness, voice, identity, and persona to Airbus' own advantage, commercially or otherwise, constitutes a willful violation of General Yeager's common law rights of publicity.

43. Defendants Airbus Group SE, Airbus Helicopters, Inc. and Airbus S.A.S. have engaged in these actions without authorization, consent or permission of General Yeager and have done so to their own commercial advantage and benefit.

44. Defendants Airbus Group SE, Airbus Helicopters, Inc. and Airbus S.A.S.'s conduct alleged herein constitutes a violation of General Yeager's rights to publicity under the common law.

45. By reason of Defendants Airbus Group SE, Airbus Helicopters, Inc. and Airbus S.A.S.'s unauthorized misappropriation of General Yeager's rights to publicity, General Yeager has sustained and will sustain substantial injury, loss and damage. Defendants Airbus Group SE, Airbus Helicopters, Inc. and Airbus S.A.S.'s unlawful activities entitle General Yeager to recover

their actual damages and Defendants Airbus Group SE, Airbus Helicopters, Inc. and Airbus S.A.S.'s profits in an amount to be proven at trial, together with his attorneys' fees and costs.

46. Airbus is a corporation with a checkered reputation, having been charged with or investigated for a litany of crimes such as bribery, corruption and insider trading. Moreover, Airbus has been recently associated with manufacturing dangerous aircraft, including well-known crashes of its A320 airplanes as well as a global recall of the A380 super jumbo jets. As a result of Defendants Airbus Group SE, Airbus Helicopters, Inc. and Airbus S.A.S.'s misappropriation of General Yeager's name and likeness, Defendants Airbus Group SE, Airbus Helicopters, Inc. and Airbus S.A.S.'s have caused damage to General Yeager's reputation by causing General Yeager to be associated with Airbus' tainted brand. Therefore, General Yeager is entitled to reputational damages.

47. By misappropriating General Yeager's name and identity in connection with its products and services, Defendants Airbus Group SE, Airbus Helicopters, Inc. and Airbus S.A.S have deprived General Yeager of future opportunities to enter into exclusive endorsement deals with other entities in the aviation industry, the industry with which General Yeager is most readily associated. As a result of Defendants Airbus Group SE, Airbus Helicopters, Inc. and Airbus S.A.S.'s misappropriation, General Yeager has suffered damages for lost opportunities.

48. Defendants Airbus Group SE, Airbus Helicopters, Inc. and Airbus S.A.S. misappropriated General Yeager's rights to publicity knowingly, maliciously, and oppressively, intending to appropriate to themselves without compensation what they knew to be General Yeager's valuable right of publicity, in disregard of General Yeager's demands that Airbus cease their unlawful activities. Said misconduct was also fraudulent, in that the public has been falsely led to believe that General Yeager consented to such commercial use of his name, likeness, voice, identity, and persona, and is associated with, approves of, and endorses Airbus' activities. Accordingly, General Yeager is entitled to punitive damages in an amount to be proven at trial.

49. Furthermore, General Yeager is entitled to a permanent injunction to prevent future misappropriation of General Yeager's right of publicity.

50. In addition, General Yeager is entitled to the seizure and return of all goods and materials which Defendants Airbus Group SE, Airbus Helicopters, Inc. and Airbus S.A.S. have sold, advertised or offered for sale in violation of General Yeager's right of publicity.

## COUNT III

## False Endorsement (15 U.S.C. §§ 1125(a)) – By General Chuck Yeager Against All Defendants

51. Plaintiffs incorporate all prior allegations of this Complaint by this reference.

52. General Yeager is the owner of the statutory and common law rights associated with General Yeager's name, likeness, and persona necessary for endorsement deals, including his right to decide whether to associate his name, image, likeness, or persona with any third-party for purposes relating to sponsorship and/or endorsement.

53. Airbus used General Yeager's name, image, and likeness without permission by utilizing the Video in its sales and by distributing the infringing material for wide publication in trade publications such as the DuPont Registry.

54. Airbus' unauthorized uses constitute false or misleading representations of fact to falsely imply the endorsement of Defendants' businesses and products by General Yeager.

55. Airbus' unauthorized uses of General Yeager's persona as to General Yeager's sponsorship and/or endorsement of Airbus' brands and products. Specifically, Airbus' use of General Yeager's name in connection with the infringing material is likely to cause consumers to believe that General Yeager is associated with Airbus Helicopters, or that General Yeager sponsors or endorses Defendants' Racer helicopter.

56. As a direct and proximate result of the acts of false endorsement set forth above, General Yeager has suffered actual damages in an amount to be proven at trial, but in no event less than $1 million. General Yeager is entitled to the full range of relief available under the Lanham Act, 15. U.S.C. § 1117, including, without limitation, an award of actual damages and the disgorgement of Airbus' profits arising from their false or misleading acts. Airbus' conduct further renders this an "exceptional" case within the meaning of the Lanham Act, thus entitling General Yeager to an award of attorneys' fees and costs.

10
FIRST AMENDED COMPLAINT

57. General Yeager is informed and believes, and based thereon alleges, that Airbus committed the unauthorized acts described above knowing that they are likely to cause consumers to falsely believe that General Yeager endorses Airbus' products. Airbus has thus willfully, knowingly, and maliciously deceived and confused the relevant consuming public, such that General Yeager is entitled to an award of treble damages.

## COUNT IV

### Common Law Trademark Infringement – By General Yeager and GCYI Against All Defendants

58. Plaintiffs incorporate all prior allegations of this Complaint by this reference.

59. Plaintiffs own valid common law trademarks in the CHUCK YEAGER mark as exclusively identifying General Yeager, and the mark is famous worldwide.

60. Airbus has infringed Plaintiffs' trademark by using this mark in the infringing material.

61. Airbus' unauthorized use of Plaintiffs' trademark is likely to confuse and deceive consumers as to the origin, sponsorship, and/or endorsement of Airbus' brands and products. Specifically, Airbus' use of Plaintiffs' mark is likely to cause consumers to mistakenly believe that General Yeager and/or GCYI is associated with Airbus, or that General Yeager and/or GCYI sponsors or endorses Airbus helicopters.

62. As a direct and proximate result of the acts of trademark infringement set forth above, Plaintiffs have suffered actual damages in an amount to be proven at trial, but in no event less than $1 million.

63. Plaintiffs are informed and believe, and based thereon allege, that Airbus committed the infringement described above knowing that its unauthorized use of the CHUCK YEAGER mark is likely to cause consumer confusion. Airbus has thus willfully, knowingly, and maliciously deceived and confused the relevant consuming public, such that Plaintiffs are entitled to an award of treble damages.

64. Plaintiffs are further informed and believe, and based thereon allege, that Airbus acted with fraud, oppression, or malice in infringing Plaintiffs' mark as alleged above. As such, in addition to the other relief sought herein, Plaintiffs are entitled to an award of punitive damages.

## COUNT V

### Trademark Infringement (15 U.S.C. § 1114(1)) – By GYCI Against All Defendants

65. Plaintiffs incorporate all prior allegations of this Complaint by this reference.

66. GCYI owns the following federally registered trademarks: (1) U.S. Registration 3,809,602 for the use of CHUCK YEAGER in connection with pre-recorded CDs and DVDs featuring history related to airplanes and flight, and (2) U.S. Registration 3,816,840 for the use of CHUCK YEAGER in connection with shirts and hats.

67. Airbus infringed GCYI's registered trademarks by using these marks in the infringing materials.

68. Airbus' unauthorized use of GCYI's registered trademarks is likely to confuse and deceive consumers as to the origin, sponsorship, and/or endorsement of Airbus' brands and products. Specifically, Airbus' use of GCYI's marks is likely to cause consumers to mistakenly believe that General Yeager is associated with Airbus, or that he sponsors or endorses Airbus products and services.

69. As a direct and proximate result of the acts of trademark infringement set forth above, GCYI has suffered actual damages in an amount to be proven at trial, but in no event less than $1 million. GCYI is entitled to the full range of relief available under the Lanham Act, 15 U.S.C. § 1117, including, without limitation, an award of actual damages and the disgorgement of Airbus' profits arising from the acts of trademark infringement. Airbus' conduct further renders this an "exceptional" case within the meaning of the Lanham Act, thus entitling Plaintiffs to an award of attorneys' fees and costs.

70. GCYI is informed and believes, and based thereon alleges, that Airbus committed the infringement described above knowing that its unauthorized use of the CHUCK YEAGER trademarks is likely to cause consumer confusion. Airbus has thus willfully, knowingly, and

maliciously deceived and confused the relevant consuming public, such that GCYI is entitled to an award of treble damages.

## COUNT VI

### Breach of Contract – By General Yeager Against All Defendants

71. Plaintiffs incorporate all prior allegations of this Complaint by this reference.

72. In 2008, General Yeager and Airbus entered into a contract under which General Yeager would speak for Airbus employees in exchange for compensation and the agreement that his appearance would not be used for any outside marketing or promotional purposes.

73. General Yeager did all, or substantially all, of the significant things that the contract required him to do.

74. Airbus, however, did something that the contract prohibited, namely, using General Yeager's name and identity for marketing, advertising and promotional purposes.

75. General Yeager was harmed by this breach of contract; and

76. Airbus' breach of contract was a substantial factor in causing General Yeager's harm.

77. General Yeager is entitled to damages according to proof.

## COUNT VII

### Unjust Enrichment – By Plaintiffs Against All Defendants

78. Plaintiffs incorporate all prior allegations of this Complaint by this reference.

79. Airbus was unjustly enriched by its misappropriation of Plaintiffs' name, likeness, identity and trademark which caused Airbus to receive a benefit that they otherwise would not have achieved.

80. The circumstances render Airbus' retention of the benefit inequitable unless Airbus pays to Plaintiffs the value of the benefit.

81. Airbus has been unjustly enriched at the expense of Plaintiffs.

82. Plaintiffs are entitled to damages as the result of Airbus' unjust enrichment according to proof.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that they be awarded judgment against Airbus as follows:

1. In favor of Plaintiffs and against Airbus on their respective claims;

2. Awarding Plaintiffs general damages, according to proof;

3. Awarding Plaintiffs reputational damages, according to proof;

4. Awarding Plaintiffs damages for lost opportunities, according to proof:

5. Awarding Plaintiffs statutory damages, according to proof;

6. Awarding Plaintiffs special damages, according to proof;

7. Awarding Plaintiffs exemplary or punitive damages, according to proof;

8. Awarding Plaintiffs restitution of any and all benefits received by Airbus through the use of Plaintiffs' name, identity and likeness;

9. Awarding Plaintiffs their reasonable attorney's fees, costs, expenses, and interest;

10. Ordering injunctive relief to prohibit, prevent and bar Airbus from continuing to utilize, or permit to be utilized, General Yeager's name, likeness or identity in connection with Airbus' products, services, or endeavors without an executed agreement; and to require Airbus to affirmatively act to remove the infringing material from the Internet and other mediums where it is still accessible; and

11. Awarding Plaintiffs such other and further relief as the Court deems just and proper.

Dated:  December 12, 2019

**Law Offices of Lincoln Bandlow, P.C.**

By: _[signature]_
Lincoln D. Bandlow
Andrew M. Keyes
Attorneys for Plaintiffs
General Charles E. "Chuck" Yeager (Ret.) and General Chuck Yeager, Inc.

**DEMAND FOR JURY TRIAL**

Plaintiffs, GENERAL CHARLES E. "CHUCK" YEAGER (RET.) and GENERAL CHUCK YEAGER, INC., hereby demand trial by jury on all claims properly triable to a jury in this action.

Dated: December 11, 2019            **Law Offices of Lincoln Bandlow, P.C.**

By: _/s/ Lincoln Bandlow_
Lincoln D. Bandlow
Andrew M. Keyes
Attorney for Plaintiffs
General Charles E. "Chuck" Yeager
(Ret.) and General Chuck Yeager, Inc.