JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:19-cv-01793-JLS-ADS                                                      Date:  March 19, 2020
Title: Charles E. Yeager et al. v. Airbus Group SE et al.

Present: **Honorable JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

   Terry Guerrero                                                          N/A
    Deputy Clerk                                                   Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFF:      ATTORNEYS PRESENT FOR DEFENDANT:

          Not Present                                           Not Present

**PROCEEDINGS:   (IN CHAMBERS)  ORDER GRANTING DEFENDANTS'
                 MOTION TO DISMISS (Doc. 18)**

     Under submission is a Motion to Dismiss filed by Defendants Airbus U.S. Space & Defense, Inc. (fka Airbus Defense and Space, Inc.) ("Airbus US") and Airbus Helicopters, Inc. ("AHI") (collectively "Moving Defendants").  (Mot., Doc. 18; Mem. Doc. 18-1.)  Plaintiffs, General Charles E. ("Chuck") Yeager and General Chuck Yeager, Inc. ("GCYI"), opposed, and Moving Defendants replied.  (Opp'n, Doc. 26; Reply, Doc. 28.)  Having considered the parties papers, and for the following reasons, the Court GRANTS the Motion on personal jurisdiction grounds.

   **I.**     **BACKGROUND**

     "General Yeager is one [of] the most, if not *the* most, famous pilots of all time." (FAC, Doc. 13 ¶ 1.)  Known as the first pilot to have broken the sound barrier, "General Yeager has been retained to provide commercial endorsements for selected companies, and they have paid substantial compensation for his services." (*Id.*)  GCYI is a corporation "organized and operating under the laws of the State of California." (*Id.* ¶ 6.)

    Defendant Airbus US "is a division of Airbus responsible for defense and aerospace products and services." (*Id.* ¶ 9.)  It is incorporated in Delaware and has its principal place of business in Herndon, Virginia.  (Angst Decl. ISO Mot., Doc. 18-2 ¶ 2.) Defendant AHI, too, is a Delaware corporation, but it has its principal place of business in Grand Prairie, Texas.  (Cawyer Decl. ISO Mot., Doc. 18-3 ¶ 2.)  Plaintiffs have not yet served the other two named Defendants, Airbus S.A.S. and Airbus S.E. (fka Airbus Group S.E.).  The former, Airbus S.A.S., "is a French company with its registered office

---

**CIVIL MINUTES – GENERAL**                     1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:19-cv-01793-JLS-ADS                                  Date:  March 19, 2020
Title: Charles E. Yeager et al. v. Airbus Group SE et al.

in Blagnac, France." (*Id.* ¶ 4.) Airbus S.E. is also a European corporation, "with its registered office in Amsterdam, Netherlands." (*Id.*) AHI is a subsidiary of Airbus S.A.S. (FAC ¶ 11.) Airbus S.A.S., in turn, is a subsidiary of Airbus S.E. (*Id.* ¶ 10.) Plaintiffs allege, but do not plead facts to support, that, in carrying out the actions described in the FAC, "each Defendant was the agent, employee or coconspirator of each other Defendant." (*See id.* ¶ 14.) Despite the lack of any such supporting factual allegations, the FAC collectively refers to Defendants as "Airbus."

In 2008, General Yeager visited Airbus facilities in Germany and France at Airbus's invitation after the parties had "entered into a contract under which General Yeager would speak [to] Airbus employees in exchange for compensation and the agreement that his appearance would not be used for any outside marketing or promotional purposes." (*Id.* ¶ 19, 72.) Yeager's presentation[1] to Airbus employees was video recorded with his consent, but "Airbus was informed and agreed . . . that the video would only be used internally." (*Id.* ¶ 19) Airbus also agreed that the video would not be used "for sales, advertising, [or] promotion . . . unless a deal setting the terms [for such use] was entered into between General Yeager and Airbus." (*Id.*) The parties did not reach such a deal. (*See id.* ¶ 20.)

At some unidentified point, General Yeager and Airbus (undifferentiated) negotiated a "potential endorsement deal." (*See id.* ¶ 23.) Plaintiffs identify Tom Enders, then-CEO of Airbus S.A.S., as the negotiator for "Airbus." (*See id.*) Presumably as part of such a deal, "Airbus wanted to use General Yeager's name in press releases." (*See id.* ¶ 24.) Although the parties reached an impasse rather than a deal—Airbus did not agree to pay Yeager's fee of over one million dollars—"negotiations continued" for an unidentified length of time. (*See id.* ¶¶ 24–25.)

Plaintiffs allege that Defendants twice used Yeager's name and likeness for promotional purposes—"to falsely imply [Yeager's] endorsement of Defendants' businesses and products"—without permission. (*See, e.g.*, FAC ¶ 54.) First, in 2012, Airbus employee Terry Lutz told Plaintiffs "that he enjoyed seeing an Airbus sales video

---

[1] Although Plaintiffs identify visits to Airbus facilities in two different countries, they speak of one presentation to Airbus employees. (*See* FAC ¶ 19.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:19-cv-01793-JLS-ADS                               Date: March 19, 2020
Title: Charles E. Yeager et al. v. Airbus Group SE et al.

that showed General Yeager saying how much he liked flying the A380 airplane." (*Id.* ¶ 31.) Plaintiffs interpreted that to mean that Airbus had created "a sales video containing footage from [Yeager's] 2008 visit to the European Airbus facilities." (*See* Victoria Yeager Decl. ISO Opp'n, Doc. 26-1 ¶ 14.) Second, on June 20, 2017, Airbus published a promotional piece on its website that included the following language: "Seventy years ago, [American test pilot] Chuck Yeager broke the sound barrier, said Guillaume Faury, CEO of Airbus Helicopters, at the Racer announcement press conference. Now, [Faury] said, we're trying to break the cost barrier. It cannot be speed at any cost." (FAC ¶¶ 26–27 (first alteration in original) (internal quotation marks omitted); *see also* Ex. A to FAC, Doc. 13-1.)

Plaintiffs filed suit in this Court on September 18, 2019. They filed the FAC on December 12, 2019, having received leave of Court to do so (*see* Doc. 14). The FAC contains seven counts: (1) violation of California Civil Code § 3344; (2) violation of common law right of publicity; (3) false endorsement under the Lanham Act, 15 U.S.C. § 1125(a); (4) common law trademark infringement; (5) federal trademark infringement, 15 U.S.C. § 1114(1); (6) breach of contract; and (7) unjust enrichment. (FAC ¶¶ 33–82.)

Moving Defendants now seek to dismiss the FAC for lack of personal jurisdiction. (Mem. at 1.) They also argue that Plaintiffs fail to state a claim against them.[2] (*Id.*)

## II. LEGAL STANDARD

Rule 12(b)(2) allows a party to assert lack of personal jurisdiction as a defense by motion. *See* Fed. R. Civ. P. (12)(b)(2). "Although the defendant is the moving party on a motion to dismiss [for lack of personal jurisdiction], the plaintiff bears the burden of establishing that jurisdiction exists." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002). "[I]n the absence of an evidentiary hearing, the plaintiff need only make 'a prima facie showing of jurisdictional facts to withstand the motion to

---

[2] Because the Court grants the Motion on personal jurisdiction grounds, it does not address Moving Defendants' 12(b)(6) grounds for dismissal.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:19-cv-01793-JLS-ADS                                             Date:  March 19, 2020
Title: Charles E. Yeager et al. v. Airbus Group SE et al.

dismiss.'" *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010) (quoting *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006)).[3]

Generally, the court may consider the pleadings as well as any declarations submitted by the parties when deciding a motion to dismiss for lack of personal jurisdiction. *See Data Disc.*, 557 F.2d at 1285. The "uncontroverted allegations in [the plaintiff's] complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor." *Rio Props.*, 284 F.3d at 1019. In other words, "for the purpose of this [prima facie] demonstration, the court resolves all disputed facts in favor of the plaintiff." *Pebble Beach*, 453 F.3d at 1154.

"In evaluating the appropriateness of personal jurisdiction over a nonresident defendant, [courts] ordinarily examine whether such jurisdiction satisfies the 'requirements of the applicable state long-arm statute' and 'comport[s] with federal due process.'" *Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909, 919 (9th Cir. 2011) (alteration in original) (quoting *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1404–05 (9th Cir. 1994)). "Because California permits the exercise of personal jurisdiction to the full extent permitted by due process, [courts] need only determine whether jurisdiction over [a defendant] comports with due process." *Bauman*, 644 F.3d at 919 (internal citation and quotation marks omitted); *see also* Cal. Civ. Proc. Code § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."). "For due process to be satisfied, a defendant, if not present in the forum, must have 'minimum contacts' with the forum state such that the assertion of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Pebble Beach*, 453 F.3d at 1155 (quoting *Int'l Shoe Co. v. State of Wash., Office of Unemp't Comp. & Placement*, 326 U.S. 310, 316 (1945)).

---

[3] The district court has discretion to hold an evidentiary hearing on a 12(b)(2) motion to resolve "issues of credibility or disputed questions of fact" raised in the pleadings and other submitted materials. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). Neither party has requested an evidentiary hearing, and the parties' dispute primarily concerns the legal sufficiency of the facts, rather than their accuracy. Therefore, the Court finds no reason to conduct an evidentiary hearing. The Court separately addresses Plaintiffs' request for jurisdictional discovery. *See infra* Section III.C.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:19-cv-01793-JLS-ADSDate: March 19, 2020
Title: Charles E. Yeager et al. v. Airbus Group SE et al.

"Applying the 'minimum contacts' analysis, a court may obtain either general or specific jurisdiction over a defendant." *Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001). "If the defendant's activities in the forum are substantial, continuous and systematic, general jurisdiction is available; in other words, the foreign defendant is subject to suit even on matters unrelated to his or her contacts [with] the forum." *Id.* On the other hand, "[a] court may exercise specific jurisdiction over a foreign defendant if his or her less substantial contacts with the forum give rise to the cause of action before the court." *Id.*

The Ninth Circuit applies a three-part test to determine whether a district court can exercise specific personal jurisdiction over a nonresident defendant:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws (the "purposeful availment" requirement);
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). "The plaintiff bears the burden of satisfying the first two prongs of the test." *Schwarzenegger*, 374 F.3d at 802. "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477 (1985)). Finally, where a Court is exercising specific jurisdiction over a defendant, "the fair warning that due process requires arises not at the time of the suit, but when the events that gave rise to the suit occurred." *Steel v. United States*, 813 F.2d 1545, 1549 (9th Cir. 1987).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:19-cv-01793-JLS-ADSDate:  March 19, 2020
Title: Charles E. Yeager et al. v. Airbus Group SE et al.

### III.DISCUSSION

Plaintiffs do not dispute that the Court lacks general jurisdiction over Moving Defendants, arguing only that an exercise of specific jurisdiction is warranted.  (*See generally* Opp'n.)  The Court therefore analyzes only whether it may exercise specific jurisdiction over Moving Defendants.

####  A.Purposeful Availment versus Purposeful Direction

"The purposeful availment requirement ensures that a nonresident defendant will not be haled into court based upon 'random, fortuitous or attenuated' contacts with the forum state." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998) (quoting *Burger King,* 471 U.S. at 475).  The phrase "purposeful availment" is a shorthand used by the Ninth Circuit to refer to both purposeful availment and purposeful direction, which are distinct concepts and analyses.  *See Schwarzenegger*, 374 F.3d at 802.  When assessing specific jurisdiction, courts use a purposeful availment analysis in suits sounding in contract and a purposeful direction analysis in suits sounding in tort.  *Id*.

Here, most of Plaintiffs' claims sound in tort.  *See Browne v. McCain*, 612 F. Supp. 2d 1118, 1123 (C.D. Cal. 2009) ("Courts often characterize violations of the Copyright Act, Lanham Act, and common law right of publicity as torts, particularly when analyzing personal jurisdiction."); *Rex Real Estate Exch., Inc. v. Rex Real Estate I, L.P.*, No. CV 18-4161-GW(SSX), 2018 WL 8335386, at *5 (C.D. Cal. Sept. 20, 2018) ("[T]he Ninth Circuit applies a purposeful direction test enunciated in *Calder v. Jones* for trademark infringement actions."); *Sturdy Gun Safe, Inc. v. Rhino Metals, Inc.*, No. 118CV01452DADBAM, 2019 WL 652862, at *4 (E.D. Cal. Feb. 15, 2019) ("Because this action for declaratory relief regarding trade dress infringement sounds more in tort than in contract, the court will apply the purposeful direction analysis.").

Still, Plaintiffs argue that the Court should apply the purposeful availment test because the "apt precedent regarding whether to apply the purposeful availment or purposeful direction tests is *Gilmore Bank v. AsiaTrust New Zealand Ltd.*, 223 Cal. App. 4th 1558, 1571 (2014), in which the California Court of Appeal held that 'the test for purposeful availment does not hinge mechanically on whether the plaintiff's claim

**CIVIL MINUTES – GENERAL**6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:19-cv-01793-JLS-ADS                                    Date: March 19, 2020
Title: Charles E. Yeager et al. v. Airbus Group SE et al.

sounds in tort or contract.[']" (Opp'n at 7.) However, in *Gilmore Bank,* the plaintiffs sued a judgment debtor and others for fraudulent transfer and sequester of assets. *See* 223 Cal. App. 4th at 1562–63. *Gilmore Bank's* explication of a flexible standard applied by California courts to "select the most appropriate test for purposeful availment," *id.* at 1571, does not mandate application of the Ninth Circuit's purposeful availment test here, in a decidedly distinguishable case.

Plaintiffs do not offer additional cases in support of their chosen test. The Court, therefore, concludes that the purposeful direction test provides the appropriate framework here, given the dominant right-of-publicity flavor of the case. *Cf. Nelson Motivation, Inc. v. Walton Motivation, Inc.*, No. CV 16-1843-RSWL-MRWX, 2016 WL 4086767, at *3 (C.D. Cal. July 29, 2016) ("Although Plaintiffs assert both contract and tort claims against Defendants, this suit sounds in tort, as Plaintiffs primarily seek relief for copyright infringement and related causes of action. Therefore, the Court applies a 'purposeful direction' analysis.").

### B. Purposeful Direction

The Ninth Circuit "evaluate[s] purposeful direction under the three-part 'effects' test traceable to the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984)." *Schwarzenegger*, 374 F.3d at 803. Under this test, "the defendant [must] have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* (quoting *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)). In *Walden v. Fiore*, the Supreme Court emphasized that under the *Calder* effects test, "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 571 U.S. at 290. In other words, in tort actions, while conducting the minimum contacts inquiry, the Court is to focus on "the relationship among the defendant, the forum, and the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:19-cv-01793-JLS-ADS					Date:  March 19, 2020
Title: Charles E. Yeager et al. v. Airbus Group SE et al.

litigation." *Id*. at 291.  "And it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State." *Id*.

Plaintiffs cite—and base their allegations on—two distinct intentional acts:  first, dissemination of the video without Yeager's consent (and in breach of an agreement proscribing external use of the video); second, use of Yeager's name in a piece published on Airbus's website.  Crucially, however, Plaintiffs neither plead nor otherwise offer facts showing that Moving Defendants are behind those intentional acts.

The FAC is sparse with respect to the video.  Plaintiffs allege only that the video was taken during Yeager's 2008 visit to Airbus (undifferentiated) facilities in Europe, that it was not to be used outside of Airbus, and that an Airbus employee told Plaintiffs in 2012 that he had seen "an Airbus sales video that showed General Yeager saying how much he liked flying the A380 airplane." (*See* FAC ¶¶ 19, 31.)  But Plaintiffs offer no facts showing which Airbus entity allegedly disseminated the sales video.  Indeed, they "are ignorant as to the identities of the specific Airbus employees who were engaged in distribution of the Video." (Opp'n at 11.)  More importantly, they are also ignorant as to which Airbus entity employs those individuals: in Opposition, Plaintiffs "ask for leave to conduct discovery to learn the identities of the Airbus employees that created and distributed the videos, *and* whether such employees were employees of Airbus U.S. and/or AHI so that Plaintiffs may establish that Airbus U.S. and AHI were engaged in the intentional act of unauthorized distribution of the Video." (*Id.* (emphasis added).)

As to the promotional piece on Airbus's website, Plaintiffs admit that it was "Airbus Helicopters S.A.S.," a French company not named in this action, that "committed an intentional act when [Guillaume] Faury made the Promotional Statement at a press event to promote the Airbus Helicopters Racer helicopter." (Opp'n at 11; Cawyer Decl. ISO Mot. ¶ 3 (identifying Airbus Helicopters S.A.S. as a French company).)  Although the statement was then published on Airbus's website (FAC ¶ 26), Plaintiffs offer no information about which Airbus entity is responsible for publishing materials on the website.  Moving Defendants, by contrast, have proffered a declaration in which they represent that www.Airbus.com is owned and operated by Airbus S.A.S. (Cawyer Decl. ISO Mot. ¶ 5.)  Plaintiffs' assertions that "Faury acted as an agent of AHI and Airbus U.S. when he made the Promotional Statement" and that his broad title in the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:19-cv-01793-JLS-ADS | Date: March 19, 2020 |
| Title: Charles E. Yeager et al. v. Airbus Group SE et al. | |

statement ("CEO of Airbus Helicopters") "would suggest to a reasonable third party that Faury has the authority to act on behalf of all Airbus Helicopters entities" (Opp'n at 11) are conclusory and unsupported.

"The existence of a parent-subsidiary relationship is insufficient, on its own, to justify imputing one entity's contacts with a forum state to another for the purpose of establishing personal jurisdiction." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015). Plaintiffs therefore may not ask the Court to disregard Airbus's corporate structure simply because they declare it to be "byzantine" or think that Airbus has organized itself a particular way so as to "shield against liability" (*see* Opp'n at 9). To be sure, an entity's contacts with the forum jurisdiction may sometimes be attributed to another. *See Ranza*, 793 F.3d at 1071. In the Ninth Circuit, a plaintiff can "pierce the corporate veil for jurisdictional purposes and attribute a local entity's contacts to its out-of-state affiliate under one of two separate tests: the 'agency' test and the 'alter ego' test." *Id.* Plaintiffs invoke only the former.

Before *Daimler AG v. Bauman*, 571 U.S. 117 (2014), the Ninth Circuit had allowed imputation of contacts under an agency theory if the subsidiary performed duties that were "sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services." *Unocal*, 248 F.3d at 928. *Daimler*, however, rejected this test for establishing general jurisdiction, a rejection the Ninth Circuit then extended to specific jurisdiction, at least as applied to *Unocal*'s formulation of the agency test, which the Supreme Court reviewed in *Daimler*. *See Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024 (9th Cir. 2017). While the Ninth Circuit has not enunciated what agency standard to apply after *Daimler*, "under any standard for finding an agency relationship, the parent company must have the right to substantially control its subsidiary's activities." *See id.* at 1024–25. And, here, as in *Williams*, plaintiffs "fail to make out a prima facie case for any such agency relationship." *See id.* at 1024.

Plaintiffs also seek to ground personal jurisdiction over Moving Defendants in a purported forum-selection clause Plaintiffs allege is contained in the 2008 agreement governing General Yeager's visit to Airbus facilities in Europe. (*See* Opp'n at 16.) Plaintiffs attach to their Opposition an email exchange between General Yeager's wife,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:19-cv-01793-JLS-ADS                                      Date: March 19, 2020
Title: Charles E. Yeager et al. v. Airbus Group SE et al.

Victoria Yeager, and Christof E. Ehrhart of the then-European Aeronautic Defence and Space Company ("EADS") that contains the alleged agreement. (*See* Ex. A to Victoria Yeager Decl. ISO Opp'n.) The email exchange, however, reveals several fundamental problems with Plaintiffs' claim of a forum-selection clause. First, an agreement was *not* reached as to where to settle any dispute that may arise out of Yeager's visits. Ehrhart's last comment on the topic was, "If you insist [on such a provision,] I would want to go back to Tom Enders and ask for his decision." (*Id.* at 2.) Plaintiffs fail to provide any evidence that they did, in fact, insist on any such provision. Besides, Victoria Yeager's request was for a provision requiring that dispute resolution take place *in the United States*; there was neither a request for, nor agreement to, a California venue provision. (*See id.* at 3 ("Also, while I would be shocked if this happened: should there be a difference of opinion that needs outside interference, that difference will be settled in the US.").) Nor does a request for a California choice-of-law provision stand in for a forum selection clause. And, even if the parties did agree to resolve all disputes arising out of Yeager's visit in California, Plaintiffs offer no evidence from which the Court could deduce that the forum-selection clause also binds Moving Defendants. In her declaration, Victoria Yeager represents that, in 2008, she discussed in person with Tom Enders a forum-selection clause *in an endorsement deal*. But no endorsement deal was ever reached. (*See* FAC ¶ 24–25.) She also represents that she conveyed details of that conversation to Ehrhart, who told her that, like Enders, he, too, "acted on behalf of Airbus SAS and its subsidiaries." (Victoria Yeager Decl. ¶ 7.) The email exchange does not reflect that representation, and Plaintiffs offer nothing else in support thereof.

      Because Plaintiffs have not established a prima facie case for personal jurisdiction over Moving Defendants, the Court DISMISSES Moving Defendants WITHOUT PREJUDICE, subject to re-filing in a proper jurisdiction. *See Grigsby v. CMI Corp.*, 765 F.2d 1369, 1372 n.5 (9th Cir. 1985) (observing that a dismissal for lack of personal jurisdiction must be without prejudice).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:19-cv-01793-JLS-ADS	Date: March 19, 2020
Title: Charles E. Yeager et al. v. Airbus Group SE et al.

### C. Discovery into Jurisdictional Issues

Plaintiffs conclude their Opposition by asking for "leave to conduct discovery to explore jurisdictional facts" before the Court rules on personal jurisdiction. (*See* Opp'n at 1, 24.) Plaintiffs explain that they are entitled to jurisdictional discovery because (1) they "believe that access to more information regarding Airbus' corporate structure would clearly reveal that the intentional acts of Enders, Faury, and [Lutz] Bertling can be attributed to AHI and Airbus U.S. for the purposes of establishing personal jurisdiction" and (2) based on a brief filed in an unrelated bankruptcy action in Texas, "Defendants have a history of misrepresenting their corporate structure and jurisdictional facts in motions to dismiss, so Plaintiffs have reason to believe that Defendants are attempting the exact same subterfuge in the current action." (*Id.* at 9, 24.) The "misrepresentation" was that Airbus "represented that AHI and Airbus U.S. are separate and independent companies, when the two companies share the same corporate parent, which at the time was known as Airbus Group S.E." (*Id.* at 9.)

Moving Defendants oppose the request for jurisdictional discovery, arguing that having an unsupported "reason to believe" that discovery will support exercise of personal jurisdiction over Moving Defendants is not enough. (*See* Reply at 19.) The Court agrees.

"The trial court [] has broad discretion to permit or deny discovery" on jurisdictional issues. *Butcher's Union Local No. 498, United Food and Commercial Workers v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986). Such "[d]iscovery should ordinarily be granted where 'pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.'" *Id.* (quoting *Data Disc.*, 557 F.2d at 1285 n.1). However, "[w]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery." *Pebble Beach*, 453 F.3d at 1160 (quoting *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995)).

Here, as Moving Defendants point out (Reply at 19), Plaintiffs do not dispute any of the jurisdictional facts proffered by Moving Defendants in support of the instant

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:19-cv-01793-JLS-ADS             Date:  March 19, 2020
Title: Charles E. Yeager et al. v. Airbus Group SE et al.

Motion.  And Plaintiffs fail to allege any facts in support of their contention that the actions of the European Airbus entities could be imputed to Moving Defendants for purposes of establishing personal jurisdiction over them.  As such, any request to conduct further discovery is based on pure speculation and/or theories about the motives behind Airbus's corporate structure, which is far from atypically complex.  "A mere belief that further discovery will enable a plaintiff to demonstrate sufficient [California] business contacts to establish the Court's personal jurisdiction is not sufficient grounds for a grant of discovery."  *Rocawear Licensing LLC v. Pacesetter Apparel Grp*., No. CV 06-3093 CJC, 2007 WL 5289737, at *4 n.2 (citing *Butcher's Union*, 788 F.2d at 540).  Where a request for discovery is based solely on speculation, a district court does not abuse its discretion by denying this request.  *See Getz v. Boeing Co*., 654 F.3d 852, 860 (9th Cir. 2011) (citing *Pebble Beach*, 453 F.3d at 1160).

The Court therefore DENIES Plaintiffs' request for discovery into jurisdictional issues, dismissing their claims against Moving Defendants without leave to amend.  *See Clerkin v. MyLife.com, Inc*., No. C 11-00527 CW, 2011 WL 3607496, at *4 (N.D. Cal. Aug. 16, 2011) (dismissing claims for lack of personal jurisdiction without leave to amend because Plaintiffs "do not justify their request" to conduct jurisdictional discovery).

### IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS Moving Defendants' Motion to Dismiss for lack of personal jurisdiction.  Plaintiffs' claims against Moving Defendants are DISMISSED WITHOUT PREJUDICE AND WITHOUT LEAVE TO AMEND.

Initials of Preparer:   tg